IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

|  |  |
|---|---|
| UNITED STATES LIABILITY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>B AND C CASINO, LLC d/b/a OFFICE BAR AND MOTEL,<br><br>Defendant. | CV 24–117–GF–DWM<br><br><br>OPINION<br>and ORDER |

On July 15, 2021, Joseph Randall Ray was fatally shot by Ronald Wilcox at the Office Bar in Vaughn, Montana. (Doc. 1 at ¶¶ 2, 7; Doc. 1-2 at ¶¶ 10–12.) In July 2023, Ray's estate (the "Estate") sued the Bar's owner, B & C Casino, LLC ("B & C Casino"), in state court, alleging claims of negligence, negligent infliction of emotional distress, wrongful death, survivorship, dram shop liability, and negligence per se ("Underlying Action"). (Doc. 1 at ¶¶ 6–8; see Doc. 22-1.) B & C Casino tendered the claim to its liquor liability insurer United States Liability Insurance Company ("United States Liability"), who agreed to defend under a reservation of rights. (Doc. 1 at ¶ 15.) According to United States Liability, "[t]here is no coverage for this loss, which arose from the use of a firearm." (Id. ¶ 17.)

1

On December 20, 2024, United States Liability filed this coverage action against B & C Casino, (*see generally, id.*), and on February 20, 2025, B & C Casino answered, counterclaiming the coverage question, (Doc. 5). There are currently two pending motions. First, B & C Casino has moved to stay this case or dismiss it as premature because the Underlying Action is still pending. (Doc. 10.) Second, United States Liability has moved for summary judgment on the question of coverage. (Doc. 16.) Because the coverage question can be resolved on the current record, B & C Casino's motion to stay is denied and United States Liability's motion for summary judgment is granted.

## BACKGROUND

The following facts are undisputed unless otherwise noted, (*see* Docs. 18, 23), and viewed in the light most favorable to B & C Casino, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam). Because the parties' factual statements do not provide a description of the underlying incident, the description of that incident is taken from the pleadings in the Underlying Action, (*see* Doc. 1-2).[1]

---

[1] B & C Casino requests that judicial notice be taken of both the existence of the Underlying Action, (Doc. 11 at 1), and the expert disclosures therein, (Doc. 22 at 4). As a matter of public record, judicial notice is taken of the pleadings filed in the Underlying Action. *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012). While it is less clear whether such notice should be taken of the expert disclosures, this case is beyond the pleading stage and, as such, the expert disclosures can be considered as part of the factual record on summary judgment. That said, those disclosures have no bearing on the outcome here, as United States Liability argues that the Absolute Firearm Exclusion bars coverage even if there

2

In July 2021, B & C Casino operated and maintained a bar, casino, and motel in Vaughn, Montana called "The Office." (Doc. 1-2 at ¶¶ 5–7.) During that time, Wilcox rented a room from B & C Casino and was residing on the premises. (*Id.* ¶ 8.) On July 15, 2021, Wilcox was served despite being visibly intoxicated and began engaging in altercations and arguing with other individuals in the bar, casino, and motel. (*Id.* ¶¶ 11–10.) At some point, Wilcox retrieved a firearm from his room and began to point it at various patrons. (*Id.* ¶ 12.) Ray was fatally shot in the stomach at "point blank range" when he attempted to disarm Wilcox. (*Id.*) His estate subsequently sued B & C Casino, LLC, alleging that B & C Casino, *inter alia*, failed to oversee the safety of the premises, overserved alcohol to its patrons, and took no action to ensure the safety of its patrons. (*See generally id.*)

At the time of the incident, B & C Casino had a Liquor Liability Policy (No. LQ 1003076) with United States Liability (the "Policy"). (Doc. 23 at ¶¶ 5–7.) Under the Policy, United States Liability agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'injury' to which this insurance applies if liability for such 'injury' is imposed on the insured by reason of selling, serving or furnishing of any alcoholic beverage." (Doc. 1-3 at 5.)

---

would otherwise be dram shop liability, which is the focus of those disclosures. *See Landa v. Assurance Co. of Am.*, 307 P.3d 284, 288–91 (Mont. 2013) (describing what an insurer must consider in determining its duty to defend).

3

But the Policy further states that United States Liability "will have no duty to defend the insured against any 'suit' seeking damages for 'injury' to which this insurance does not apply," (*id.*), and the "Absolute Firearms Exclusion" in the Policy excludes from coverage any "'injury', including cost of defense, for any claim or 'suit' arising or resulting from directly, or indirectly, the use of firearms of any kind," (*id.* at 33). The Policy also excludes coverage for punitive or exemplary damages. (*Id.* at 20.)

On or about July 19, 2021, B & C reported the incident described above to United States Liability. (Doc. 23 at ¶ 11.) On September 21, 2021, United States Liability responded, raising coverage issues and reserving its rights. (*Id.* ¶ 12.) After the filing of the Estate's lawsuit on August 18, 2023, United States Liability agreed to defend under a reservation of rights, reserving the right to withdraw the defense of the underlying suit and recoup and recover defense costs and legal fees incurred in that suit. (*Id.* ¶¶ 13–14.)

## ANALYSIS

The central question in this case is whether the Absolute Firearms Exclusion bars coverage under the Policy even though the allegations in the Underlying Action trigger coverage in the first instance. Because it does, and that conclusion can be reached on the current record, B & C Casino's motion to stay is denied and United States Liability's motion for summary judgment is granted.

I.   **Motion to Stay**

B & C Casino argues that this action is premature because issues of fact and liability in the Underlying Action have not yet been determined. (Doc. 10.) More specifically, B & C Casino argues that Count 5 of the complaint in the Underlying Action alleges dram shop liability based on the alleged overserving of alcohol that is separate and apart from claims related to the firearm. (*See* Doc. 1-2 at ¶¶ 40–47.) In response, United States Liability argues that federal district courts routinely determine coverage issues regarding pending litigation and that to resolve the present case, "the Court need only review the language of the absolute firearm exclusion and compare such language to the allegations asserted in the underlying action to determine whether coverage is afforded under [the P]olicy." (Doc. 19 at 9.) United States Liability further argues that no federal abstention doctrine supports delaying this matter. United States Liability is correct.

A.   **Cases and Controversies**

B & C Casino first argues that "[t]he Constitution of Montana, Article VII, Section 4 limits the judicial power of courts to 'justiciable controversies.'" (Doc. 11 at 2.) However, federal, not state, law governs this Court's jurisdiction. "The Declaratory Judgment Act provides that, 'in a case of actual controversy within its jurisdiction, any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not future

5

relief is or could be sought.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting 28 U.S.C. § 2201(a)) (alterations omitted). "[T]he phrase 'case of actual controversy] in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *Id.* "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment." *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The Ninth Circuit has "consistently held that a dispute between an insurer and its insureds over the duties imposed by an insurance contract satisfies Article III's case and controversy requirement." *Gov't Empls. Ins. Co. v. Dizol*, 133 F.3d 1220, 1222 n.2 (9th Cir. 1998). Indeed, "an insurer's declaratory action regarding it duty to defend and indemnify [is] sufficiently ripe, even when the underlying liability action in state court ha[s] not yet proceeded to judgment." *Am. Sts. Ins. Co. v. Kearns*, 15 F.3d 142, 144 (9th Cir. 1994). However, even if a "suit passes constitutional and statutory muster, the district court must also be satisfied that entertaining the action is appropriate." *Dizol*, 133 F.3d at 1223.

### B. Discretion

While a district court's exercise of jurisdiction over declaratory relief actions is discretionary, there is "no per se rule against the district court exercising its

jurisdiction to resolve an insurance coverage dispute when the underlying liability suit is pending in state court." *Kearns*, 15 F.3d at 145. "The *Brillhart* factors remain the philosophic touchstone for the district court. The district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." *Dizol*, 133 F.3d at 1225 (referencing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942) and its progeny). "If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be held in state court." *Id.* "However, there is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically." *Id.* Indeed, there is no presumption here as United States Liability is not a party to the Underlying Action, and the Underlying Action does not address coverage. Thus, whether this case should proceed turns on the *Brillhart* factors, which weigh against staying the case.

First, federal courts are cautioned to avoid the "needless determination of state law issues." *Id.* While coverage in this case turns on Montana law, "there is no great need for state court resolution of an open question of state law in this case." *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 804 (9th Cir. 2002). To the contrary, federal district courts regularly apply state law to resolve

7

insurance coverage disputes, particularly in a case such as this, where there is no claim or argument regarding state public policy. Second, there is no evidence of forum shopping. Once again, insurance companies regularly seek coverage determinations in federal court based on loss or injury claims being pursued against their insureds in state court. (*See* Doc. 19 at 15 (collecting cases).) Finally, B & C Casino has not filed a coverage case or raised the coverage issue in the Underlying Action, so there is no danger of duplicative litigation. Thus, the *Brillhart* factors do not support a stay.

C.   **Necessary Information**

B & C Casino's motion primarily rests on its contention that the record is insufficiently developed to determine United State Liability's rights and duties under the Policy. Not so. Under Montana law, "[t]he duty to defend arises when a complaint against an insured alleges facts which, if proved, would result in coverage." *Tidyman's Mgmt. Servs. Inc. v. Davis*, 330 P.3d 1139, 1149 (Mont. 2014). "It is independent from and broader than the duty to indemnify created by the same insurance contract." *Id.* (internal quotation marks omitted). "Unless there exists an unequivocal demonstration that the claim against an insured does not fall within the insurance policy's coverage, an insurer has a duty to defend." *Farmers Union Mut. Ins. Co. v. Staples*, 90 P.3d 381, 385 (Mont. 2004). The duty to indemnify, on the other hand, "arises only if coverage under the policy is

8

actually established." *St. Farm Mut. Auto. Ins. Co. v. Freyer*, 312 P.3d 403, 410–11 (Mont. 2013). Ordinarily, if "there is no duty to defend, it follows that there can be no duty to indemnify." *Skinner v. Allstate Ins. Co.*, 127 P.3d 359, 364 (Mont. 2005) (internal quotation marked omitted); *but see Troutt v. Colo. W. Ins. Co.*, 246 F.3d 1150 (9th Cir. 2001). Thus, as argued by United States Liability, the pleading in the underlying action and the language of the Policy "constitute the proverbial universe of documents essential to [this] declaratory judgment action." (Doc. 19 at 17); *see Landa v. Assurance Co. of Am.*, 307 P.3d 284, 288 (Mont. 2013) ("[T]o determine whether [the insurer] had a duty to defend [its insured], we will look first to the terms of the policy, and next to the facts alleged by [the underlying] complaint.").

    B & C Casino's argument to the contrary is unpersuasive. B & C Casino insists that because one of the underlying claims is based on dram shop liability for overserving patrons, including patrons other than Wilcox, coverage cannot be determined until after a jury assesses that claim. But United States Liability is arguing that even if there is dram shop liability that falls within the four corners of the Policy, the Absolute Firearms Exclusion nevertheless bars coverage. Thus, there is no factual dispute that must be resolved before this coverage question can be answered, distinguishing this case from *Northwest National Casualty Co. v. Phalen*, wherein the coverage determination depended on whether the resulting

9

harm was within the expectation or intention of the insured. 597 P.2d 720 (Mont. 1979). Accordingly, B & C Casino's motion to stay is denied.

## II. Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it impacts the outcome of the case in accordance with governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Tatum v. Moody*, 768 F.3d 806, 814 (9th Cir. 2014).

United States Liability moves for summary judgment based on the Absolute Firearm Exclusion, arguing that it bars coverage under the Policy regardless of the outcome of the Underlying Action. (Doc. 16.) In response, B & C Casino once again appears to conflate the possibility of dram shop liability with the impact of the exclusionary language. In so doing, B & C Casino argues that there is a possibility of dram shop liability for the overserving of patrons, including patrons other than Wilcox, and that the Policy covers such conduct. While correctly identifying that the Policy "expressly grants coverage for liquor liability claims," (Doc. 22 at 8), B & C Casino ignores its express exclusion of coverage for

10

"'injury, including cost of defense, for any claim or 'suit' arising or resulting from directly, or indirectly, the use of firearms of any kind," (Doc. 1-3 at 33). Because the Absolute Firearms Exception unambiguously excludes coverage in these circumstances, United States Liability's motion for summary judgment is granted and it is permitted to recoup its defense costs.

### A. Absolute Firearms Exclusion

As the forum state, Montana law applies in this diversity action. *Med. Lab. Mgmt. Consult. v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 812 (9th Cir. 2002). "The interpretation of an insurance contract is a question of law." *United Nat'l Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 214 P.3d 1260, 1265 (Mont. 2009). "[W]hen the language of a policy is clear and explicit, the policy should be enforced as written." *Id.* Giving the words of a contract their ordinary meaning, insurance policies are strictly construed against the insurer in favor of extending coverage. *Travelers Cas. & Sur. Co v. Ribi Immunochem Rsch., Inc.*, 108 P.3d 469, 474 (Mont. 2005). The determination of whether insurance coverage exists is a two-step process. First, the insured must prove that the policy covers the loss incurred. *Id.* at 476. Then, to avoid coverage, the insurer has the burden to show that specific policy language excludes the insured's loss. *Id.* Because exclusions from coverage "are contrary to the fundamental protective purpose of an insurance

11

policy[,]" they "must be narrowly and strictly construed." *Newman v. Scottsdale Ins. Co.*, 301 P.3d 348, 355 (Mont. 2013) (internal quotation marks omitted).

B & C Casino first argues that United States Liability must look beyond the pleadings in the Underlying Action to determine whether coverage is triggered here. However, United States Liability does not argue that dram shop liability coverage has not been triggered under the Policy; rather, the dispositive question is whether, even assuming dram shop liability is established, coverage is barred by the Absolute Firearms Exclusion. Thus, summary judgment turns on the Court's assessment of this exclusionary language, which states: "[t]his insurance does not apply to 'injury', including cost of defense, for any claim or 'suit' arising or resulting from directly, or indirectly, the use of firearms of any kind." (Doc. 1-3 at 33.) It further clarifies that "[t]his exclusion applies to any 'injury,' claim or 'suit' regardless of whether the use of firearms is a direct cause, a contributing cause or a concurrent cause of any loss." (*Id.*) While United States Liability argues that this language unequivocally bars coverage in this case, B & C Casino insists that the exclusion should be construed in favor of coverage because Montana has consistently found the term "arising out of" to be ambiguous. United States Liability has the better argument.

"An ambiguity exists where the contract, when taken as a whole, reasonably is subject to two different interpretations." *Travelers*, 108 P.3d at 474.

12

Interpretive differences should be "resolve[d] from the viewpoint of a layperson untrained in law or the insurance business." *Giacomelli v. Scottsdale Ins. Co.*, 221 P.3d 666, 672 (Mont. 2009) (internal quotation marks omitted). Ambiguous language is interpreted to provide coverage. *Travelers*, 108 P.3d 474. Nevertheless, courts should not "seize upon certain and definite covenants expressed in plain English with violent hands and distort them so as to include a risk clearly excluded by the insurance contract." *Id.*

  B & C Casino is correct that the Montana Supreme Court has previously held that a commercial general liability policy exclusion for claims "arising out of" the use of an automobile did "not clearly and unambiguously exclude from coverage the theories of liability pled by the plaintiffs," specifically claims for "[n]egligent hiring, training, and supervision and negligent failure to warn." *Pablo v. Moore*, 995 P.2d 460, 464 (Mont. 2000). But the Montana Supreme Court subsequently clarified that the holding in *Pablo* was based on the fact that "the alleged negligent hiring . . . stood as an independent source of the plaintiffs' injuries," one that was not excluded from coverage. *R.S. v. United Servs. Auto. Ass'n*, 507 P.3d 565, 569 (Mont. 2022). Here, however, the Absolute Firearms Exclusion expressly covers more conduct than the exclusionary language at issue *Pablo*. To wit, the Exclusion explicitly states that it "applies to any 'injury' claim or 'suit' regardless of whether the use of firearms is a direct cause, a contributing

13

cause or a concurrent cause of any loss." (Doc. 1-3 at 33.) Unlike the policy language at issue in *Pablo*, the Exclusion contemplates that there could be more than one contributing factor to a loss but explicitly states that if one of those factors is a firearm, there is no coverage. Viewed from the objective perspective of the average consumer, the Absolute Firearm Exclusion precludes coverage for losses alleged by the Estate because they involve a firearm.

While an issue of first impression in Montana, United States Liability points to several cases from other jurisdictions in which courts found nearly identical firearms exclusions to be unambiguous. *See Petty v. U.S. Liab. Ins. Co.*, 2022 WL 823516 (D.S.C. Jan. 11, 2022) (finding that an almost identical provision unambiguously barred coverage for wrongful death caused by gunshot wound under commercial liability policy); *Bakhsh v. Mt. Vernon Fire Ins. Co.*, 2023 WL 4088840, at *4 (D.S.C. June 20, 2023) ("[T]he Absolute Firearms Exclusion clearly and unambiguously excludes any coverage for the shooting . . . because all suits or claims arising out of the use of a firearm are excluded [under the applicable commercial liability policy]."); *see also Dixon v. United Specialty Ins. Co.*, 2023 WL 6787985, at *3 (N.D. Ga. Sept. 8, 2023) ("[T]his Court finds that the Policy unambiguously excludes coverage for the firearm-related injuries that Plaintiff sustained."); *Hudson Specialty Ins. Co. v. Snappy Slappy LLC*, 2019 WL 1938801, at *3 (M.D. Ga. May 1, 2019) (finding that exclusion for loss based on "use" of

14

firearm "applie[d] to *anyone's use* of a firearm"); *Capitol Specialty Ins. Corp. v. JBC Ent't Holdings, Inc.*, 289 P.3d 735, 739 (Wash. App. 2012) (holding that because negligence claim failed as a matter of law because it was "wholly dependent upon [a] shooting, an occurrence that is specifically excluded from coverage" under the applicable unambiguous firearm exclusion); *see also Markel Int'l Ins. Co. v. 2421 Salam, Inc.*, 2009 WL 1220557 (E.D. Pa. Mar. 31, 2009); *Farmbrew Realty Corp. v. Tower Ins. Co of N.Y.*, 289 A.D.2d 284 (N.Y. 2001).[2]

Because the Absolute Firearms Exclusion unambiguously bars coverage for the losses alleged by Ray's Estate in the Underlying Action, summary judgment is granted in favor of United States Liability.

## B. Recoupment of Defense Costs

Under Montana law, "an insurer may pursue recoupment if it (1) timely and explicitly reserved the right to recoup the costs; and (2) provided specific and adequate notice to the insured of the possibility of reimbursement." *Nat'l Indemnity Co. v. State*, 499 P.3d 516, 533 (Mont. 2021) (internal quotation marks

---

[2] Cases that found ambiguity did so because the policy language made it unclear whether the provision applied to employees versus patrons. *See, e.g., Underwriters Ins. Co. v. Purdie*, 145 Cal. App. 3d 57 (1983) (employee used firearm and court permitted negligent hiring claim to proceed); *Braxton v. U.S. Fire Ins. Co.*, 651 S.W.2d 616 (Mo. Ct. App. 1983) (excluding coverage for loss "arising out of certain enumerated acts done by, for or on behalf of the named insured," including those "arising out of the ownership or use of a firearm" (internal quotation marks omitted)). Similar language is not present here.

15

omitted). "Even absent an express agreement by the insured, the right to recoupment is enforceable if the insurer satisfies the [above] requirements . . . ." *Id.* at 534 (internal quotation marks and alteration omitted). Here, United States Liability has filed a declaration of James Pyrah, one of its coverage specialists, stating that United States Liability agreed to defend under a reservation of rights and "reserved the right to withdraw the defense of the [Underlying Action] and to recoup and recover defense costs and legal fees incurred in the defense of the [Underlying Action]." (Doc. 18-1.) B & C Casino does not dispute these facts. (*See* Doc. 23 at ¶¶ 11–14.) Thus, United States Liability can recoup its defense costs.

## Conclusion

Based on the foregoing, IT IS ORDERED that B & C Casino's motion to stay, (Doc. 10), is DENIED and United States Liability's motion for summary judgment, (Doc. 16), is GRANTED. The Clerk is directed to enter judgment in favor of United States Liability and close the case file.

DATED this 30 day of July, 2025.

_____
Donald W. Molloy, District Judge
United States District Court

16